FEB-04-2015 09:41AM   From:          ID:JOSEPH R NEMETH          Page:002   R=100%

## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (this "Agreement"), dated as of January 29, 2015, by and between Global Apparel Network US, Inc. (the "Company" or "Borrower"), and JOSEPH NEMETH LIVING TRUST (together with its successors and assigns, "Lender,") provides the terms on which the Lender shall lend to Borrower and Borrower shall repay the Lender. The parties agree as follows:

### 1.     TERM LOAN AND TERMS OF PAYMENT

**1.1     Term Loan.** Subject to the terms and conditions of this Agreement, Lender agrees to make a loan (the "Term Loan") to Borrower in the amount of $200,000 (the "Term Loan Amount").

**1.2     Repayment of Term Loan.**

(a)     **Calculation of Interest.** Interest shall accrue on the unpaid balance of the Term Loan Amount at a rate equal to 18% per annum. Interest shall be calculated on the basis of a 365 day year for the actual number of days elapsed. Notwithstanding the foregoing, in the event that and so long as any Event of Default shall have occurred and be continuing, interest shall be payable on the Term Loan at a per annum rate equal to 24.9% (the "Default Rate"). If the rate of interest called for under this Agreement at any time exceeds the maximum rate legally enforceable, the rate of interest required to be paid hereunder shall be automatically reduced to the maximum rate legally enforceable.

(b)     **Payments.** The Borrower shall make monthly interest payments of $3,000 on the thirtieth (20th) day of each month commencing on March 20, 2015. Unless due sooner by acceleration, demand or otherwise, all outstanding principal and accrued interest on the Term Loan Amount shall be due and payable in full on Feb 28, 2016 (the "Maturity Date"). All payments made hereunder shall be made in lawful money of the United States of America at Lender's principal place of business or at such other place as Lender directs Borrower in writing. All or part of the Term Loan, including interest, may be prepaid at any time without penalty, provided that the Borrower shall on each prepayment date pay interest on the amount prepaid through the Maturity Date together with the prepayment of such principal amount and any other amounts due and payable hereunder.

**1.3     Funding.** Lender shall commence funding of the Term Loan Amount on or before January 31, 2015.

**1.4     Conditions.** As a condition to the funding of the Term Loan Amount, Lender shall have received (i) a copy of duly executed signature pages to this Agreement and (ii) the Warrant (as defined below) attached hereto as Exhibit A.

### 2.     GUARANTY AND SECURITY

**2.1**     Each of Global Apparel Network Ltd., a Bermuda exempted company ("GAN Bermuda") Joseph Shohfi, personal guarantor ("SHOHFI"),  and Danette Gorman, personal guarantor ("GORMAN") and collectively, the "Guarantors") hereby, jointly and severally,

FEB-04-2015 09:41AM   From:   ID:JOSEPH R NEMETH   Page:003   R=100%

unconditionally and irrevocably guarantees (the "Guaranty") to the Lender the full and timely payment (whether at stated maturity, acceleration or otherwise) and performance of the Term Loan Amount and all other obligations of the Borrower under this Agreement. The Guarantors further acknowledge that the Guaranty is a guaranty of payment and performance and not collection and shall be, under all circumstances, primary, absolute and conditional, irrespective of, and unaffected by (i) the genuineness, enforceability, validity of this Agreement or any future amendment or modification thereof; (ii) any bankruptcy or insolvency of the Borrower, (iii) any fact or circumstance that might constitute a defense available to, or discharge of, the Borrower, or (iv) the absence of any notice to, or knowledge of, the Guarantors of any matters or circumstances relating to or otherwise affecting the Term Loan or the Borrower. Each Guarantor further acknowledges and agrees that its obligation hereunder shall not be discharged until all of the Term Loan Amount and all other obligations of the Borrower under this Agreement has been indefeasibly paid in cash in full.

2.2     As Security for the Term Loan, the Borrower hereby unconditionally assigns, pledges and grants to the Lender, and hereby creates a continuing first priority lien and security interest in favor of the Lender in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired, (collectively, the "Collateral"):(i) all cash, cash proceeds, fixtures of every kind and nature, all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), money, deposit accounts, and any other contract rights or rights to the payment of money; (ii) all proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Borrower from time to time with respect to any of the foregoing; and (iii) any intellectual property rights or other revenue producing contracts of Borrower, including rights to any patent applications.  All security interests described in this Section 2 shall be null and void upon the full payment of the Term Loan.

2.3     Borrower shall, from time to time, as may be required by the Lender with respect to all Collateral, immediately take all actions as may be requested by the Lender to perfect the security interest of the Lender in the Collateral, including, without limitation, with respect to all Collateral over which control may be obtained within the meaning of sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable, the Borrower shall immediately take all actions as may be requested from time to time by the Lender so that control of such Collateral is obtained and at all times held by the Lender. All of the foregoing shall be at the sole cost and expense of the Borrower.

2.4     The Borrower irrevocably authorizes the Lender at any time and from time to time to file in any relevant jurisdiction any financing statements (including fixture filings) and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral. The Borrower agrees to provide all information required or desirable to be included in such financing statement to the Lender promptly upon request by the Lender.  The Borrower

agrees that at any time and from time to time, at the expense of the Borrower, the Borrower will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that the Lender may request, in order to perfect and protect any security interest granted hereby or to enable the Lender to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Collateral.

**2.5**      As security for the full and timely payment and performance of its Guaranty, each Guarantor hereby grants to the Lender a continuing first priority security interest in, lien on, and to the extent necessary to grant a security interest or lien against, a collateral assignment of, and right of set off against, all of its respective Collateral, whether now owned or existing or hereinafter acquired or arising and wherever located.

## 3.      REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender as follows:

**3.1**      **Due Organization and Authorization; Enforceability.**      Borrower is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. The execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of Borrower and constitutes a legal, valid and binding obligation of Borrower, enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect generally relating to or affecting creditors' rights.

**3.2**      **No Conflicts.** The execution, delivery and performance of this Agreement (a) does not conflict with any of Borrower's organizational documents, (b) does not violate or contravene any law, rule, regulation, order, writ or injunction applicable to Borrower, and (c) does not constitute an event of default under or otherwise breach any agreement in respect of any material agreement by which Borrower or Borrower's property is bound.

**3.3**      **No Liens; No Default.** At the time the Collateral becomes subject to the lien and security interest created by this Agreement, the Company will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement and other liens permitted by this Agreement. The Company is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation. There is no event which is, or with notice or lapse of time or both would be, an Event of Default under this Agreement.

**3.4**      **Senior Liens and Restricted Disposition.** The Company will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to the Collateral other than sales of inventory in the ordinary course of Borrower's business, restrict, or grant, create, permit or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on the Collateral, which is superior in right of collection to the security interests created hereby, except for the liens of suppliers, materialmen and merchants' liens incurred in the ordinary course of

FEB-04-2015 09:45AM   From:                ID:JOSEPH R NEMETH                Page:004   R=100%

Borrower's business except as expressly provided for in this Agreement or with the prior written consent of Lender.

**3.5**  **Capitalization; No Subsidiaries.**

(a)  All of the issued and outstanding shares of the Company are owned by GAN Bermuda. All of such shares have been duly authorized and validly issued in compliance with applicable laws, and are fully paid and non-assessable. There are no outstanding obligations, options, warrants, convertible securities or other rights, agreements, arrangements or commitments obligating the Company to issue or sell any shares of capital stock of, or any other interest in, the Company. There are no outstanding contractual obligations of the Company to repurchase, redeem or otherwise acquire any shares of capital stock of the Company or to provide funds to, or make any investment in, any other person.

(b)  The Company does not have any subsidiaries.

**3.6**  **Priority.**  The Company covenants and agrees that the payment of the Term Loan (including payment of the interest thereon) is senior in right of payment to the payment of all other indebtedness (existing or future) of the Company, except as provided in Section 3.4. This Agreement is effective to create in favor of the Lender, a legal, valid and enforceable security interest in the Collateral and the proceeds thereof. When a UCC-1 is filed with the Secretary of State of the State of Delaware, this Agreement, when executed and delivered and the Term Loan is fully funded, shall constitute, and will at all times constitute, a fully perfected first priority lien on, and security interest in, all rights, title and interest of the Company in such Collateral and the proceeds thereof, as security for the Term Loan.

**4.**  **COVENANTS**

**4.1**  **Affirmative Covenants.**  For so long as the Term Loan is outstanding, Borrower shall: (a) preserve and maintain its legal existence and good standing, except for changes approved in advance, in writing, by Lender; (b) comply in all material respects, with all laws, ordinances and regulations to which each is subject; (c) promptly (but in no event more than five (5) days after the occurrence of each such event) give written notice to Lender of the occurrence of any Event of Default; and (d) execute all further instruments, and take all further actions as Lender reasonably requests to perfect or continue the security interest created by this Agreement for the benefit of Lender.

**4.2**  **Negative Covenants.**  For so long as the Term Loan is outstanding, Borrower may not, without the prior written consent of Lender, with such consent not to be unreasonably withheld, (a) merge or consolidate with another entity, except where Borrower is the surviving entity and secures the Term Loan, (b) liquidate, dissolve or effect a recapitalization or reorganization in any form of transaction, (c) sell, dispose or otherwise transfer any of Borrower's right or interest in any letter of credit other than to pay any associated fees and charges, (d) change its legal name, identity, type of organization or corporate structure, (e) change the location of its chief executive office or its principal place of business, (f) change its Federal Taxpayer Identification Number or organizational identification number (if any), or (g) change its jurisdiction of organization (in each case, including by merging with or into any

FEB-04-2015 09:43AM   From:   ID:JOSEPH R NEMETH   Page:006   R=100%

other entity, reorganizing, organizing, dissolving, liquidating, reincorporating or incorporating in any other jurisdiction).

**5.**   **EVENTS OF DEFAULT; RIGHTS AND REMEDIES**

**5.1**   **Events of Default.** Any one of the following is an event of default (an "Event of Default") under this Agreement:

(a)   Payment Default. Borrower fails to pay any principal amount of the Term Loan when due or fails to pay interest on the Term Loan within three business days after its due date.

(b)   Covenant Default. Borrower (i) fails to perform any obligation contained in Section 4.1, Section 4.2 or Section 5.2 of this Agreement or (ii) fails to perform, keep, or observe any other material term, provision, condition, covenant or agreement contained in this Agreement and fails to cure such default within ten (10) days after the earlier of the time Borrower becomes aware of such default and the date Borrower receives notice of default from Lender.

(c)   Insolvency. The entry of a decree or order by a court having jurisdiction adjudging the Company bankrupt or insolvent, or approving a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Company, under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, and the continuance of any such decree or order unstayed and in effect for a period of 60 days; or the commencement by the Company of a voluntary case under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency, or other similar law, or the consent by the Company to the institution of bankruptcy or insolvency proceedings against it, or the filing by the Company of a petition or answer or consent seeking reorganization or relief under federal bankruptcy law or any other applicable federal or state law, or the consent by the Company to the filing of such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator or similar official of the Company or of any substantial part of the property of the Company, or the making by the Company of an assignment for the benefit of creditors, or the admission by the Company in writing of its inability to pay its debts generally as they become due, or the taking of corporate action by the Company in furtherance of any such action.

(d)   Priority. Borrower shall create or allow to exist any lien or other charge on the Collateral which is not in compliance with Section 3.4 and such lien or other charge shall not have been removed or otherwise disposed of to Lender's reasonable satisfaction after not less than ten (10) days' notice from Lender

(e)   Misrepresentations. Borrower makes any material misrepresentation or material misstatement in any representation or warranty in this Agreement.

**5.2**   **Rights and Remedies.**

(a)   Generally. Upon the occurrence of any Event of Default, Lender may, at its option, by notice to Borrower, declare all or any portion of the principal amount outstanding

FEB-04-2015 09:43AM   From:                    ID:JOSEPH R NEMETH                    Page:007   R=100%

hereunder together with all interest, fees, and other charges due hereunder to be due and payable, and the same shall thereupon become due and payable immediately. Lender may further, with notice to not less than ten (10) days' notice to Borrower, assert all rights and remedies of a Lender under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate or dispose of all or any portion of the Collateral. So long as the sale of the Collateral is made in a commercially reasonable manner, the Lender may sell such Collateral on such terms and to such purchaser(s) as the Lender in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors disposing of similar property. The proceeds of sale shall first be applied to the complete payment to Lender of all obligations to repay principal and interest under this Loan agreement and the remaining proceeds of sale shall be immediately remitted to Borrower. At any sale of the Collateral, if permitted by applicable law, the Lender may be the purchaser, licensee, assignee or recipient of the Collateral or any part thereof and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price of the Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, the Borrower waives all claims, damages and demands it may acquire against the Lender arising out of the exercise by it of any rights hereunder. The Borrower hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Term Loan or otherwise. At any such sale, unless prohibited by applicable law, the Lender or any custodian may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. Neither the Lender nor any custodian shall be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing, nor shall it be under any obligation to take any action whatsoever with regard.  Notwithstanding anything contained herein to the contrary, upon occurrence of any Event of Default or continuance thereof, the Lender may, in its sole discretion, without any order or preference, enforce its rights against any Guarantor, or enforce and realize on any of the Collateral.

(b)   Remedies Cumulative. Lender's rights and remedies under this Agreement are cumulative. Lender's exercise of one right or remedy is not an election, and Lender's waiver of any Event of Default is not a continuing waiver. Lender's delay is not a waiver, election, or acquiescence. All rights of Lender and the security interests granted to Lender hereunder, shall be absolute and unconditional, irrespective of (i) any waiver, amendment or modification of this Agreement or (ii) any other circumstances which might otherwise constitute a defense available to, or a legal or equitable discharge of any surety.

6.   **GAN BERMUDA REPRESENTATIONS; EQUITY GRANTS.**

6.1   **GAN Bermuda Capitalization.** GAN Bermuda represents and warrants to Lender as follows:  on the date hereof, the authorized capital stock of the Company consists of 120,000,000 shares of Class A Voting Common Stock, par value $____ per share (the "Class A

FEB-04-2015 09:44AM From: ID:JOSEPH R NEMETH Page:008 R=100%

Common Stock") of which 87,413,842 shares are issued and outstanding, 10,000,000 shares of Class B Non-Voting Common Stock, par value $___ per share of which 551,864 are issued and outstanding and 9,000,000 are reserved for issuance pursuant to the Company's stock option plan. All outstanding shares have been duly authorized and validly issued in compliance with applicable laws, and are fully paid and non-assessable. There are no outstanding obligations, options, warrants, convertible securities or other rights, agreements, arrangements or commitments obligating the Company to issue or sell any shares of capital stock of, or any other interest in, the Company. There are no outstanding contractual obligations of the Company to repurchase, redeem or otherwise acquire any shares of capital stock of the Company or to provide funds to, or make any investment in, any other person. The Warrant Shares (as defined below), when issued and delivered in compliance with the provisions of this Agreement, will be validly issued, fully paid and non-assessable. Other than the Borrower, GAN Bermuda does not have any subsidiaries.

**6.2** **Issuance of Warrants.** Concurrently with the Lender's funding of the Term Loan Amount, GAN Bermuda shall issue a warrant (the "Warrant") to purchase 400,000 shares of Class A Common Stock (the "Warrant Shares"), which Warrants shall be immediately exercisable and have a term of exercise equal to seven years, in the form of Exhibit A attached hereto. When issued, all of the Warrant Shares shall be validly issued, fully paid and non-assessable, shall be issued without violation of any preemptive or similar rights of any stockholder of GAN Bermuda and be free and clear of all taxes, liens and charges.

**7.** **GENERAL PROVISIONS**

**7.1** **Choice of Law; Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, except to the extent perfection and the effect of perfection or non-perfection of any security interest granted under this Agreement, are governed by the laws of a jurisdiction other than the State of New York. Each party submits to the exclusive jurisdiction of the state and federal courts located in New York City, Borough of Manhattan, for any action or proceeding relating to this Agreement, and expressly waives any objection it may have to such jurisdiction or the convenience of such forum.

**7.2** **Notices.** Notices or demands must be in writing or electronic mail or sent by certified mail, postage prepaid, return receipt requested, or by facsimile at the addresses listed below. A party may change its notice address by written notice to the other parties.

If to Borrower:

Global Apparel Network US, Inc.
385 Fifth Avenue
New York, NY 10016
Attention: Joe Shohfi

If to Guarantors:

c/o Global Apparel Network LTD.
385 Fifth Avenue
New York, NY 10016
Attention: Joe Shohfi

Joseph Shohfi
510 w 52nd St.
New York, NY 10019

If to Lender:

Joseph Nemeth Living Trust
1424 Echo Lane
Bloomfield Hills, MI 48302

**7.3**   **Successors and Assigns.** This Agreement binds and is for the benefit of the successors and permitted assigns of each party. Borrower may not assign this Agreement or any rights under it without Lender's prior written consent.

**7.4**   **Payment Set Aside.** To the extent that the Company makes a payment or payments to the Lender pursuant to this Agreement or the Lender enforces or exercises its rights hereunder, and such payment or payments or the proceeds of such enforcement or exercise or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, recovered from, disgorged by or are required to be refunded, repaid or otherwise restored to the Company, a trustee, receiver or any other person under any law, then to the extent of the restoration to the Company in full of any such payment(s) the obligation or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made or such enforcement or setoff had not occurred.

**7.5**   **Indemnification.** Borrower hereby, indemnifies, defends and holds Lender and its respective officers, directors, employees, agents and advisors harmless against any and all costs, expenses (including reasonable attorneys' fees and disbursements), claims, demands, actions, losses, obligations, damages, penalties, judgments, suits or liabilities asserted by any other party in connection with the transactions contemplated by this Agreement.

**7.6**   **Amendments in Writing, Integration; Severability.** All amendments and waivers to this Agreement must be in writing and signed by all of the parties. This Agreement represents the entire agreement about this subject matter, and supersedes all prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Agreement. Each provision of this Agreement is severable from every other provision in determining the enforceability of any provision.

**7.7**   **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all taken together, constitute one agreement, and facsimile and pdf signatures shall be deemed original signatures hereunder.

FEB-04-2015 09:44AM   From:        ID:JOSEPH R NEMETH        Page:010  R=100%

**7.8    Representation by Counsel.** Neither party has represented or provided advice to the other with respect to this Agreement. Borrower, Guarantors and Lender have to the extent they have deemed advisable, obtained the advice of its own counsel in respect of this Agreement and the transactions contemplated hereby.

**7.9    Waiver of Jury Trial.** BORROWER AND EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

(Signatures are on the following page)

FEB-04-2015 09:44AM   From:        ID:JOSEPH R NEMETH        Page:010  R=100%

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

BORROWER

GLOBAL APPAREL NETWORK US, INC.

By: _____
Name: Joseph Shohfi
Title: CEO

LENDER

JOSEPH NEMETH LIVING TRUST

By: _____
Name: Joseph R Nemeth
Title: Trustee

GUARANTORS, for purposes of Sections 2.1, 2.5, 5.2(a) and 7.1, 7.8 and 7.9

JOSEPH SHOHFI, as personal guarantor.

By: _____
Name: Joseph Shohfi
Title: CEO

DANETTE GORMAN, as personal guarantor.

By: _____
Name: 
Title: EVP Customer Experi—

GLOBAL APPAREL NETWORK LTD., as Guarantor and as issuer for purposes of Sections 6.1 and 6.2

By: _____
Name: Joseph Shohfi
Title: CEO